UNITED STATES BANKRUPTCY COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA
GREENSBORO DIVISION

IN RE: )
)
Bruce Lynn Crittendon and )
Leslie Marie Crittendon, ) Case No. 06-10322 C-13G
)
Debtors. )
)

## MEMORANDUM OPINION

This case came before the court on August 8, 2006, for a confirmation hearing with respect to the plan proposed by the Debtors and for consideration of the Standing Trustee's objection to confirmation of the proposed plan. Stephen D. Ling appeared on behalf of the Debtors and Jennifer R. Harris appeared on behalf of the Trustee. The Trustee's objection was filed under section 1325(b) and raises the issue of whether the plan provides that all of the Debtors' projected disposable income to be received in the applicable commitment period will be applied to make payments to unsecured creditors.[1] For the reasons that follow, the objection will be sustained and confirmation will be denied.

### FACTS

Debtors' Schedule I reflects current gross income of $7,605.00 per month and current net income of $5,635.00 per month. Their Schedule J reflects current expenditures of $4,356.00 per month for the Debtors and their dependent children, leaving monthly net

---

[1]This case was filed on March 28, 2006, and thus is governed by the Bankruptcy Code as amended by the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 ("BAPCPA").

income of $1,279.00. According to the Form B22C filed by the Debtors, their annualized income exceeds the applicable median family income for North Carolina and so the Debtors were required to complete the remaining portions of Form B22C. Based upon the deductions claimed in Form B22C, the Debtors listed monthly disposable income of minus $79.42 on Line 58 of their Form B22C.

In their plan, the Debtors propose to make 36 plan payments consisting of a plan payment of $775.00 on April 27, 2006, increasing to $805.00 per month beginning in May of 2006. The unsecured creditors of the male Debtor and the female Debtor are classified separately, with the unsecured creditors of the male Debtor receiving a pro rata share of $4,600.00 (the liquidation value of his estate) and the unsecured creditors of the female Debtor receiving zero.

The Trustee objected to the Debtors' plan because of certain deductions the Debtors claimed in their B22C. Specifically, the Trustee objects to four deductions the Debtors claimed on Line 47 of the B22C as monthly payments on secured debts. The Trustee disputes these deductions on the grounds that the collateral securing the debts has been or will be surrendered by the Debtors upon confirmation of the plan and no further payments will be made on such debts. The secured debts in question include a first and second mortgage on a residence located in Michigan which was owned by the Debtors when this case was filed. The Debtors claimed a

deduction of $1,976.00 for the first mortgage and $376.00 for the second mortgage. As pointed out by the Trustee, the Debtors, with court authorization, have sold the residence and do not propose to make the payments claimed as deductions. The other disputed deductions are a deduction of $223.00 for a debt listed as secured by a horse trailer and a deduction of $169.00 for a debt listed as secured by a boat. However, under their proposed plan, the Debtors are surrendering both the horse trailer and the boat and both creditors are treated as unsecured. According to the Trustee, the disallowance of the disputed deductions means that the Debtors actually have disposable income of $1,571.58[2] rather than the minus $79.00 computed by the Debtors. As a result, the Trustee argues that a higher plan payment and a 60 month commitment period are required pursuant to section 1325(b).

ANALYSIS

The current version of section 1325(b)(1) provides as follows:

> (b)(1) If the trustee or the holder of an allowed unsecured claim objects to the confirmation of the plan, then the court may not approve the plan unless, as of the effective date of the plan–
>
> (A) the value of the property to be distributed under the plan on account of such claim is not less than the amount of such claim; or

---

[2]This figure is derived by adding back the deductions in question and allowing the Debtors to deduct $1,093.00, the IRS Local Standard figure for mortgage/rent.

- 3 -

>           (B) the plan provides that all of the
> debtor's projected disposable income to be
> received in the applicable commitment period
> beginning on the date that the first payment
> is due under the plan will be applied to make
> payments to unsecured creditors under the
> plan.

Because Debtors' plan obviously does not provide for full payment of unsecured claims, the Debtors are not entitled to confirmation of their plan unless the plan complies with section 1325(b)(1)(B), i.e., unless the plan provides that all of their "projected disposable income" to be received in the "applicable commitment period" will be applied to make payments to unsecured creditors.

"Projected disposable income" was not a defined term prior to BAPCPA and is not defined in the new provisions added to the Bankruptcy Code by BAPCPA. However, the "disposable income" to be projected in determining "projected disposable income" is defined in section 1325(b)(2). As amended by BAPCPA, the term "disposable income" means "current monthly income" received by the debtor (other than child support payments, foster care payments or certain disability payments for a dependent child) less amounts reasonably necessary to be expended for the maintenance or support of the debtor or a dependent of the debtor or for post-petition domestic support obligations and less qualified charitable contributions.

"Current monthly income" is a new term under BAPCPA defined in section 101(10A) as "the average monthly income from all sources

that the debtor receives (or in a joint case the debtor and the debtor's spouse receive) . . . derived during the 6-month period ending on the last day of the calendar month immediately preceding the date of the commencement of the case" but excluding benefits received under the Social Security Act and certain other benefits to victims of terrorism or war crimes.  Although this definition and its reliance upon strictly historical data in projecting disposable income already has generated much disagreement and a number of conflicting judicial opinions, the objection now before the court does not involve the income side of the disposable income equation.

The current monthly income of the Debtors, when multiplied by twelve, is greater than the median family income of North Carolina for a family the size of Debtors' family.  Therefore, the amounts to be deducted from their current monthly income in order to arrive at their "disposable income" under section 1325(b)(2) must be determined as provided in section 1325(b)(3).  Pursuant to section 1325(b)(3), the amounts reasonably necessary to be expended for purposes of the section 1325(b)(2) calculation "shall be determined in accordance with subparagraphs (A) and (B) of section 707(b)(2). . . ."  The Debtors argue that the use of "shall" in section 1325(b)(3) makes it mandatory that their deductions be determined as provided in section 707(b)(2)(A) and (B).  According to the Debtors, the payments that have been challenged by the

Trustee must be allowed based upon the following provisions of section 707(b)(2)(A)(iii):

> (iii) The debtor's average monthly payments on account of secured debts shall be calculated as the sum of--
>
> (I) the total of all amounts scheduled as contractually due to secured creditors in each month of the 60 months following the date of the petition;

It is the position of the Debtors that since they had secured debts owing to all of the creditors listed on line 47 of the B22C when this case was filed, the payments listed on line 47 were "scheduled as contractually due to secured creditors" as described in section 707(b)(2)(A)(iii) and therefore were properly included as deductions in arriving at their "monthly disposable income" on line 58 of their Form B22C. The Debtors argue that section 1325(b)(2)(A)(iii), in plain language, specifically allows a deduction for "the total of all amounts scheduled as contractually due to secured creditors" and does not condition such calculation on whether the collateral is retained by the debtors after the case is commenced. According to the Debtors, the means test contained in section 707(b)(2) is a "backward looking test" which is designed to measure the debtor's financial condition at the time of filing, and to determine whether at that time the debtor is in need of bankruptcy relief. On that basis, the Debtors conclude that a surrender of collateral after the commencement of the case is inconsequential.

Debtors' argument may be correct in the context of a chapter 7 case in which the court is called upon to determine whether the granting of relief would be an abuse of the provisions of chapter 7. In that context, the application of the provisions of section 707(b)(2) involves a snapshot evaluation of the debtor's financial condition on the petition date such that a surrender of collateral arguably may be irrelevant and inconsequential. However, the situation presented by a section 1325(b) objection in a chapter 13 case is materially different because the timing of the application of section 707(b)(2)(A) and (B) is different in the chapter 13 case.

The first sentence of section 1325(b)(1) contains the language "as of the effective date of the plan." This language was a part of section 1325(b) prior to the enactment of BAPCPA and was left in place when BAPCPA was enacted. It is a settled rule of statutory interpretation "that a statute must, if possible, be construed in such fashion that every word has some operative effect." <u>United States v. Nordic Village, Inc.</u>, 503 U.S. 30, 36, 112 S.Ct. 1011, 1015, 117 L.Ed.2d 181 (1992). In this case, it is possible to give operative effect to "as of the effective date of the plan" and the court, therefore, must do so.

The "as of the effective date of the plan" language as used in section 1325(b)(1) is followed by both subparagraph (A) and subparagraph (B) of section 1325(b)(1). Given this arrangement of

the statutory language, the plain meaning of the statute is that both subparagraph (A) and subparagraph (B) are modified by the "as of the effective date of the plan" language in section 1325(b)(1) and such language therefore is applicable to both subparagraphs. This means that the determination called for under section 1325(b)(2)(B) depends upon whether <u>as of the effective date of the plan</u> the plan commits all of the debtor's projected disposable income to make payments to unsecured creditors. In order to make this determination, the court must determine the "disposable income" of the debtor as of the effective date of the plan which generally is regarded as the date of confirmation. See <u>In re Solomon</u>, 67 F.3d 1128, 1132 (4th Cir. 2995)("Projected disposable income typically is calculated by multiplying the monthly income <u>at the time of confirmation</u> by 36 months . . . then determining the portion of the income which is disposable according to the statutory definition." Emphasis supplied.).[3] Accordingly, "disposable income" will be determined in this case by applying

---

[3] While the cases are not unanimous, it appears that a majority have concluded that the effective date of the plan is the date of confirmation. See <u>In re Chang</u>, 274 B.R. 295 (Bankr. D. Mass. 2002); <u>In re Allen</u>, 240 B.R. 231 (Bankr. W.D. Va. 1999); 8 COLLIER ON BANKRUPTCY ¶ 1325.06[3][b][i] (15th ed. rev. 2006)(effective date is date that confirmation order becomes final, but courts normally determine present value as of the date of confirmation because, as a practical matter, confirmation order is entered at or shortly after confirmation hearing). Although these authorities involve section 1325(a)(5)(B)(ii), they are instructive in this case because the same "effective date" language is used in both section 1325(a)(5)(B)(ii) and in section 1325(b)(1).

section 707(b)(2)(A) and (B) according to the pertinent circumstances existing on the date of the confirmation hearing, rather than on the basis of the circumstances existing on the petition date.

Based upon the historical nature of BAPCPA's definition of "current monthly income," it probably makes no difference whether the determination regarding the debtor's current monthly income is made at the time of the confirmation hearing or as of the petition date. However, the same is not true regarding the court's determination of the "amounts reasonably necessary to be expended under paragraph (2)" in accordance with subparagraphs (A) and (B) of section 707(b)(2). As illustrated by this case, the timing of the determination of the debtor's expenses "in accordance with subparagraphs (A) and (B) of section 707(b)(2)" can make a difference. It is true that the deductions permitted in section 707(b)(2)(A)(ii)(I) for the National Standards and Local Standards issued by the Internal Revenue Service are fixed artificially at the amounts specified in the standards set by the Internal Revenue Service. Absent a revision of these standards by the IRS, these amounts will not change between the petition date and the date of the confirmation hearing. Such is not the case with other expenses and deductions allowed under section 707(b)(2)(A)(ii)(I). Under that provision, the debtor's expenses also include "the debtor's actual monthly expenses for the categories specified as Other

Necessary Expenses issued by the Internal Revenue Service. . . ."
These are the expenses dealt with on Lines 30 through 37 of Form B22C for taxes, mandatory payroll deductions, life insurance, court-ordered payments, certain education expenses, childcare, healthcare and telecommunication services. Since these deductions depend upon the actual expenses of the debtor, the amount of the expenses may change significantly between the petition date and the confirmation date. For example, a court-ordered support payment listed on line 33 of the B22C could end between the two dates as a result of a child reaching majority or the death or remarriage of a spouse who had been receiving court-ordered support.[4]

The deduction for secured debt payments provided for in section 707(b)(2)(A)(iii) likewise is a deduction that may be different by the time of the confirmation hearing. In order to compute the Debtors' disposable income in the present case, it is necessary to determine whether at the time of the confirmation

---

[4]The enumerated "other actual expenses" must be "necessary" in order to be deductible and therefore may be challenged on that basis at the confirmation hearing and thus exposed to judicial scrutiny and discretion. See Internal Revenue Manual § 5.15.1.10 (2004)("Other expenses may be considered if they meet the necessary expense test - they must provide for the health and welfare of the taxpayer and/or his family or they must be for the production of income. This is determined based on the facts and circumstances of each case."). Determining the debtor's expenses and deductions in accordance with subparagraphs (A) and (B) of section 707(b)(2) thus involves more than a mechanical process in which the court serves merely as a rubber stamp for fixed amounts derived from the Local and National Standards adopted by the IRS and the amounts inserted by the debtor in Form B22C.

hearing the deductions in question fell within section 707(b)(2)(A)(iii). Section 707(b)(2)(A)(iii) applies to the monthly payments "scheduled as contractually due to secured creditors in each month of the 60 months following the date of the petition. . . ." Under this language, the payments must be scheduled as contractually due in the future and the payments must be payments to secured creditors in order to be deductible under section 707(b)(2)(iii). The house, horse trailer and boat payments that have been challenged by the Trustee do not satisfy these requirements.

In the context of a chapter 13 case in which a debtor is proposing a plan for confirmation, the terms of the plan determine whether payments have been scheduled for payment in the future and also establishes the classification of creditors on the effective date of the plan. The confirmed chapter 13 plan constitutes a new agreement between the debtor and the creditors and is controlling as to the payments to be made to creditors, as well as to which of the creditors are secured creditors. See In re Nicholson, 70 B.R. 398, 400 (Bankr. D. Colo. 1987). The payments in question consist of payments of $1,976.00 and $376.00 to United Bank of Michigan, a payment of $223.00 to Citizens Bank and a payment of $169.00 to Lake Michigan Credit Union. It is undisputed that the Debtors' plan does not propose to make these payments during the plan period. The payments therefore are not scheduled for payment in

the future. Furthermore, United Bank of Michigan, Citizens Bank and Lake Michigan Credit Union are not classified as secured creditors in the plan and if the plan were confirmed would not be secured creditors on the effective date of the plan. Hence, the payments in question do not constitute payments to secured creditors for purposes of section 707(b)(2)(iii).

It follows that the Trustee's objection to these deductions should be sustained and such deductions should be disallowed. The result is that such payments may not be included as part of the "amounts reasonably necessary to be expended" in computing Debtors' disposable income under section 1325(b)(2) and that Debtors' disposable income under section 1325(b)(2) is $1,571.58 rather than the negative $79.42 figure claimed by the Debtors. Therefore, a proposed monthly payment of $805.00 clearly is not a sufficient plan payment in this case because such a payment does not commit all of the Debtors' projected disposable income for payment to unsecured creditors.

Debtors' plan also is fatally deficient as a result of the commitment period specified in the plan because a 36-month plan period in this case does not comply with section 1325(b)(4)(A)(ii). The issue here is whether the "applicable commitment period" should be interpreted as a multiplier and not as a specific plan duration, i.e., as a temporal requirement. While the cases are split, this court is persuaded by the reasoning of the courts that have treated

section 1325(b)(4) as creating a temporal requirement.  See In re Davis, No. 06-43888, 2006 WL 2391138, *9 (Bankr. E.D. Mich., Aug. 21, 2006); In re Alexander, 344 B.R. 742, 751 (Bankr. E.D.N.C. 2006); In re Dew, 344 B.R. 655, 661 (Bankr. N.D. Ala. 2006); In re Schanuth, 342 B.R. 601, 697-08 (Bankr. W.D. Mo. 2006).  Therefore, as above-median-family-income debtors with disposable monthly income, the Debtors are required to submit a plan with a commitment period that is 60 months in duration.

For the foregoing reasons, the court concludes that the Debtors' plan does not comply with the requirements of section 1325(b) and may not be confirmed.  Accordingly, an order denying confirmation of the plan will be entered contemporaneously with the filing of this memorandum opinion.

This 1st day of September, 2006.

_____
WILLIAM L. STOCKS
United States Bankruptcy Judge

PARTIES IN INTEREST

Bruce and Leslie Crittendon
6318 Lakebend Court
Greensboro, NC 27410-8253

Stephen D. Ling, Esq.
706 Green Valley Road, Suite 505
Greensboro, NC 27408-7023

Anita Jo Kinlaw Troxler, Trustee